**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **SAMANTHA JENKINS, EDWARD BROWN,** ) | |
| **KEILEE FANT, BYEON WELLS, MELDON** ) | |
| **MOFFIT, ALLISON NELSON, HERBERT** ) | |
| **NELSON, JR., and TONYA DEBERRY,** *et al.*, ) | |
| ) | **Civil Action No.: 4:15-CV-00252-CEJ** |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **THE CITY OF JENNINGS,** ) | |
| ) | |
| **Defendant.** ) | |

**MEMORANDUM IN SUPPORT OF JOINT MOTION FOR**
**PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

The Parties, by and through their counsel, respectfully submit this Memorandum of Law in Support of their Joint Motion for Preliminary Approval of Class Action Settlement.

**I.      BACKGROUND OF LITIGATION**

On February 8, 2015, Plaintiffs filed the above-captioned class action lawsuit against the Defendant The City of Jennings ("Defendant") alleging that Defendant had violated Plaintiffs' constitutional rights under color of state law by incarcerating them and others similarly situated in the City of Jennings Jail because they could not afford to pay debts allegedly owed from traffic and other minor offenses and by causing the Plaintiffs and others similarly situated to be subjected to inhumane conditions of confinement in the City of Jennings Jail. Defendant has denied and continues to deny Plaintiffs' claims, and Defendant denies any wrongdoing or liability of any kind to Plaintiffs or to any member of the class (as defined hereinafter).

On January 15, 2016, following a period of thorough examination and investigation of the facts and law relating to the matters in this litigation, the Parties participated in substantial,

1

adversarial settlement negotiations conducted by mediator Richard Sher. As a result, a Settlement Agreement has been reached, subject to this Court's approval.

The Parties have concluded that settlement is desirable in order to avoid the time, expense, and inherent uncertainties of defending prolonged litigation and to resolve finally and completely all pending and potential claims relating to the alleged conduct involved in this litigation. The Parties further believe that this Settlement Agreement offers significant benefits to Class Members and is fair, reasonable, adequate and in the best interest of all Class Members, defined as:

> All persons who were placed and/or kept in the custody of the City of Jennings Jail after being detained pursuant to a warrant issued by the City of Jennings Municipal Court arising from the nonpayment of a previously imposed fine or court costs and who were allegedly subjected to inhumane conditions of confinement in the City of Jennings Jail. The Class Period is from February 8, 2010 to September 16, 2015.

On March 15, 2016, the Parties filed a Joint Motion to Certify Class pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

## II.  THE TERMS OF THE SETTLEMENT

In the interest of avoiding protracted and costly litigation, the Parties have agreed to a proposed settlement with the following basic terms:

1. Defendant has agreed to create a settlement fund in the amount of Four Million Seven Hundred Fifty Thousand and 00/100 Dollars ($4,750,000.00).

2. Before distribution to the individual Class Members, 25% of the Settlement Fund will be utilized to pay any and all attorneys' fees and costs subject to court approval.

3. An additional Ten Thousand and 00/100 Dollars ($10,000.00) will be distributed to each of the eight (8) Class Representatives as incentive awards.

4.     The remaining amount will be paid to the Class Members who submit a valid claim on a per diem basis calculated by dividing the remaining amount by the number of days spent in jail by potential class members, set out greater detail in the Settlement Agreement, or donated to the Friends of Jennings School District Foundation.

5.     Any and all administrative expenses will not be deducted from the above Settlement Fund, but instead shall be paid by the Defendant through funds outside of the Settlement Fund.

## III.   PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT IS APPROPRIATE

The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost and rigor of prolonged litigation. *See Little Rock School Dist. v. Pulaski Cnty. Special School Dist. No. 1*, 921 F.2d 1371, 1383 (8th Cir. 1990) ("The law strongly favors settlements. Courts should hospitably receive them ... As a practical matter, a remedy that everyone agrees to is a lot more likely to succeed than one to which the defendants must be dragged kicking and screaming.").  Settlement agreements conserve judicial time and limit expensive litigation.  4 Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 11:41, at 87 (4th Ed. 2002) (hereafter "*Newberg on Class Actions*") ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").

Where, as here, the parties resolve class action litigation through a class-wide settlement, they must obtain the court's approval. *See* Fed.R.Civ.P. 23(e). Review of a proposed class action settlement generally occurs in two steps.  In the first instance, "[t]he judge should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)." *Manual for Complex Litigation* (Fourth) § 21.632 . (2004) (hereafter "*Manual*").  Additionally, "[t]he judge must make a preliminary determination

on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." *Id.* If the proposed settlement falls "within the range of possible approval," the Court should grant preliminary approval and authorize the parties to give notice of the proposed settlement to the class members. *Gautreaux v. Pierce,* 690 F.2d 616, 621 n.3 (7th Cir. 1982). Stated another way, preliminary approval is a "determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *In re Traffic Exec. Ass'n - E. Railroads,* 627 F.2d 631, 634 (2d Cir. 1980).

The proposed settlement falls well within the "range of possible approval," particularly in light of the substantial risks and costs associated with further litigation.   Furthermore, the settlement is entitled to a presumption of fairness, since it was reached through arm's-length bargaining between experienced counsel, and does not evidence unduly preferential treatment or other obvious deficiencies.   Therefore, the proposed settlement satisfies the standards for preliminary approval and warrants the dissemination of notice apprising class members of their opportunity to participate in the settlement, or to opt out of or object to the settlement.

### A.       Review of the Applicable Factors Favors Approval of the Settlement

At the preliminary-approval stage, the Court should "make a preliminary determination on the fairness, reasonableness and adequacy of the settlement terms ..." *Manual* §21.633; *see also In re St. Paul Co. Sec. Litig.*, 2004 WL 1459426, *2 (D. Minn. June 7, 2004) ("Subject to final determination following a hearing after notice to the Settlement Class, the Court preliminarily approves the Settlement as fair, reasonable and adequate."); *First Nat'l Bank v. Am. Lenders Facilities, Inc.,* 2002 WL 1835646, *1 (D. Minn. July 16, 2002) ("The proposed settlement between the Plaintiff Class and the Defendants appears, upon preliminary review, to be within the

range of reasonableness and accordingly, the Notice ... shall be submitted to the class members for their consideration and for hearing under Fed..R.Civ P. 23(e).").  As the Honorable Senior U.S. District Judge Gaitan stated in preliminarily approving a proposed class action settlement:

> The Court finds that the proposed Settlement Agreement meets the criteria for preliminary approval because this Court's 'preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatments of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval.' Manual for Complex Litigation, Third (Federal Judicial Center 1995), at § 30.41. Specifically, the Court finds the proposed Settlement Agreement was reached after arm's-length negotiations between experienced attorneys familiar with the legal and factual issues of this case; that all Class Members are treated fairly under the Settlement Agreement; and that the provisions in the proposed Settlement Agreement regarding payment of Class Counsels' attorneys' fees and costs are reasonable.  The Court also finds upon preliminary evaluation that the proposed Settlement Agreement substantially fulfills the purposes and objectives of this [class] action, and provides substantial relief to the Class Members, without the cost, risk or delays of further litigation at the trial and appellate levels.

*Blando v. Nextel West Corp.*, No. 02-0921-FJG, Doc. 41, at 2 (W.D. Mo. Filed Oct. 9, 2003).

If the Court finds the settlement "within the range of possible approval," it should then order that the class be notified of the settlement and of a formal fairness hearing to be held on the question of settlement approval.  *See Manual* §40.43 (model preliminary-approval order). Because the Settlement Agreement here far exceeds any preliminary threshold regarding fairness, reasonableness and adequacy, the Court should preliminarily approve this class action settlement.

### 1. The Proposed Settlement Negotiated By The Parties Enjoys An Initial Presumption of Fairness

At the outset, the proposed settlement should enjoy a presumption of fairness. Courts usually adopt 'an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." 4 *Newberg on Class Actions* § 11:41, at 90; *see also Little Rock School Dist.,* 921 F.2d at 1391 (stating that class action settlement agreements "are presumptively valid"); *Petrovic v. Amoco Co.,* 200 F.3d 1140, 1148 (8th Cir.1999) (holding that a "strong public policy favors agreements, and courts should approach them with a presumption in their favor.").   After the parties' arm's-length negotiations, "judges should not substitute their own judgment as to optimal settlement terms for the judgments of the litigants and their counsel." *Petrovic,* 200 F.3d at 1148-49 (internal quotation marks omitted); *see also In re Wireless Tel. Fed. Cost Recovery Fees Litig.,* 396 F.3d 922, 934 (8th Cir. 2005) ("We have recognized that a class action settlement is a private contract negotiated between the parties.  Rule 23(e) requires the court to intrude on that private consensual agreement merely to ensure that the agreement is not the product of collusion and that, taken as a whole, it is fair, adequate and reasonable to all concerned." (citation omitted)); *In re BankAmerica Corp. Sec. Litig.,* 210 F.R.D. 694, 702 (E.D. Mo. 2002) ("Counsel for the parties have become intimately familiar with the facts and legal issues involved in this case. Based on their knowledge of the case and the applicable law, as well as their experience in litigating securities claims, counsel believe the settlement is fair, reasonable and adequate. Although the Court is not bound by counsel's opinion, their opinion nevertheless is entitled to great weight.").

### 2. The Proposed Settlement Provides Fair and Substantial Relief To All Class Members

The settlement provides fair and substantial relief to all class members.  Under the terms of the settlement, each of One Thousand Nine Hundred and Sixty-seven (1,967) potential class

members are entitled to a share of Three Million Four Hundred Eighty-two Thousand Five

Hundred and 00/100 Dollars ($3,482,500.00) proportionate to the number of days that they spent

in the custody of Jennings out of the Eight Thousand Three Hundred Fifty-nine (8,359) days served

collectively by the class.  The settlement amount was reached by negotiation of the parties in

consideration of settlements reached and judgments awarded in analogous cases, the costs and

risks attendant to continued litigation, and the available funds and insurance coverage of the

Defendant.  The settlement provides Four Hundred Sixteen and 61/100 Dollars ($416.61) to each

Class Member for each day spent in jail.  This figure falls well within the range of settlement and

judgment amounts in analogous cases.  Moreover, it is fair and substantial relief given the

significant challenges and risks associated with pursuing such claims individually.

## IV.  THE PROPOSED CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

### A.  The Proposed Class Meets the Requirements Under *Amchem* For Certification Of A Settlement Class

Before granting preliminary approval of a settlement in a case where a class has not yet

been certified, the court should determine whether the class proposed for settlement is appropriate

under rule 23.  See *Amchem Prods. V. Windsor*, 521 U.S. 591, 620 (1997); *Manual* § 21.632.  "To

proceed as a class action, the litigation must satisfy the four prerequisites of Rule 23(a) as well as

at least one of the three requirements of Rule 23(b)… These prerequisites are otherwise known as

(1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation." *In re Aquila*

*ERISA Litig.*, 237 F.R.D. 202, 207 (W.D. Mo. 2006).  In certifying a settlement class, however,

the court is not required to determine whether the action, if tried, would present intractable

management problems, "for the proposal is that there be no trial."  *Amchem*, 521 US. At 620; *see*

*also* Fed.R.Civ.P. 23(b)(3)(D).  Here the proposed class meets all of the requirements of Rule 23(a)

and satisfies the requirements of Rule 23(b)(2) and (3).  Therefore, the parties now request that the Court provisionally certify the proposed class for settlement purposes only.

### B.       The Requirements Of Rule 23(a) Are Met

"Rule 23(a)(1) requires that the proposed class be 'so numerous that joinder of all members is impracticable." *Aquila ERISA Litig.*, 237 F.R.D. at 207 (quoting Fed.R.Civ.P 23(a)(1)).  There are One Thousand Nine Hundred and Sixty-seven (1,967) potential class members and, thus, the existence of numerosity is readily apparent.  *See, e.g., Jones v. Novastar Fin., Inc.*, 257 F.R.D. 181, 186 (W.D. Mo. 2009) ("The proposed class numbers over one thousand person… [Plaintiff] has satisfied Rule 23(a)(1).").

The proposed class also meets the commonality requirement of Rule 23(a)(2), which requires that "there are questions of law or fact common to the class."  "This requirement imposes a light burden on the plaintiff seeking class certification and does not require commonality on every single question raised in the class action." *Aquila ERISA Litig.*, 237 F.R.D. at 207. "Commonality may be satisfied 'where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated." *Id.*

Here, the Plaintiffs' Complaint specifically lists the common issues of fact implicated bytheir claims:

> a.   Whether the Defendant has a policy and practice of keeping people in its jail who owe money on old judgments unless and until they can pay a monetary sum;
>
> b.   Whether the Defendant has a policy and practice of incrementally lowering the amount required to buy a debtor's release from custody as the person sits in jail;
>
> c.   Whether the Defendant has a policy and practice of failing to conduct meaningful inquiries into the ability of a person to pay before jailing the person for non-payment;

     d.     Whether the Defendant provides notice to debtors that their ability to pay will be a relevant issue at the proceedings at which they are jailed or kept in jail and whether the Defendant makes findings concerning ability to pay and alternatives to incarceration;

     e.     Whether the Defendant provides adequate legal representation to those jailed for unpaid debts in proceedings that result in their incarceration;

     f.     Whether the City of Jennings' jail conditions are unsanitary and inhumane in the ways described in this Complaint;

     g.     Whether Defendant's employees and agents have a policy and practice of threatening debtors and families of debtors with incarceration for unpaid debts without informing them of their rights;

     h.     Whether Defendant has a policy of issuing and executing warrants for the arrest of debtors despite lacking probable cause that they have committed any offence and without any notice or opportunity to be heard concerning their ability to pay or the validity of the debt;

     i.     Whether Defendant has a policy of coercing inmates to perform free janitorial labor in exchange for increased food rations; and

     j.     Whether Defendant has a policy and practice of closing the courtroom to the public.

The Plaintiffs' Complaint also lists the common questions of law implicated by their claims:

     a.     Whether keeping people in jail solely because they cannot afford to make a monetary payment is lawful;

     b.     Whether people are entitled to a meaningful inquiry into their ability to pay before being jailed by the Defendant for non-payment of debts;

     c.     Whether people who cannot afford to pay the Defendant are entitled to the consideration of alternatives to incarceration before being jailed for non-payment of debts;

     d.     Whether people are entitled to adequate legal representation in debt-collection proceedings initiated and litigated by Defendant prosecutors that result in their incarceration if they cannot afford an attorney;

     e.     Whether the Defendant can employ jail, threats of jail, and other harsh debt-collection measures (such as ordering payment of significant portions of a person's public assistance benefits) against debtors who cannot afford immediately to pay the Defendant in full;

f.  Whether Defendant can arrest people based solely on their non-payment without any probable cause that they have committed any willful conduct or other offense and without notice and an opportunity to be heard concerning legal predicates for a valid detention, such as their ability to pay and the validity of the debt;

g.  Whether Defendant can, consistent with federal law, coerce free labor through the provision of insufficient food rations;

h.  Whether the inhumane and unsanitary conditions endured by the Plaintiffs and other Class members violate the Eighth and Fourteenth Amendments; and

i.  Whether Defendant can, consistent with the First Amendment to the United States Constitution, close court proceedings from public view.

Plaintiffs also meet the typicality and adequacy requirements for serving as class representatives.  Rule 23(a)(3) requires that "the claims… of the representative parties are typical of the claims…of the class…" Fed.R.Civ.P 23(a)(3).  "This subsection simply requires 'a demonstration that there are other members of the class who have the same or similar grievances as the [class representative].'  The burden of demonstrating that Rule 23(a)(3) is met is 'fairly eas[y]…so long as other class members have claims similar to the named plaintiff.'" *Aquila ERISA Litig.*, 237 F.R.D. at 209 (citation omitted; alterations by *Aquila* court). Typicality, however, does not require that the claims be identical. "When finding a class representative's claims typical, it is not necessary to first find that all putative class members share identical claims." *Jones*, 257 F.R.D. at 187.

Here, the named Plaintiffs' claims are typical of those of the Class because they derive from one central alleged scheme and set of policies and practices.  It is alleged that the Defendant operates this alleged scheme in materially the same manner every day, and so Plaintiffs' interests are co-extensive with those of the class, since every class member claims injury resulting from the same alleged misconduct by Defendant. Plaintiffs have shown that their claims "emanate from the

same legal theory or offense as the claims of the class," thereby satisfying the typicality requirement. *Doran v. Missouri Dep't of Social Servs.*, 251 F.R.D. 401, 405 (W.D. Mo. 2008).

The fourth and final requirement of Rule 23(a) is that the "representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). The focus of the adequacy inquiry is whether "(1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." *Jones*, 257 F.R.D. at 191 (citing *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 562-63 (8th Cir. 1982)).

Here, there are no conflicts of interest or other antagonisms between Plaintiffs on the one hand and Class Members on the other. *See Jones*, 257 F.R.D. at 192. All are individuals with the mutual incentive to establish the unconstitutionality of Defendant's policies and practices and vindicating the constitutional rights to which they are entitled. All Class Members were impacted by the policies and practices at issue in the same manner.

In addition, Plaintiffs' counsel have provided fair and vigorous representation for the Class. Plaintiffs are represented by attorneys from Equal Justice Under Law, who have experience in litigating complex civil rights matters in federal court and extensive knowledge of both the details of the City's alleged policies and procedures and the relevant constitutional and statutory law. Plaintiffs are also represented by attorneys from ArchCity Defenders who have extensive experience with the functioning of the entire municipal court system in the City of Jennings through their representation of numerous impoverished people in the City of Jennings. Plaintiffs are also represented by the Saint Louis University School of Law, whose distinguished clinical professors and dedicated students have devoted enormous time and resources to studying the functioning of the municipal court system and the applicable federal and state law, as well as to

representing impoverished people  in the City of Jennings.  *See White v. Martin*, 2002 WL 32596017, at *10 (W.D. Mo. Oct. 3, 2002) ("In the absence of proof to the contrary, courts presume that class counsel is competent and sufficiently experienced to vigorously prosecute the class action.")

### C.      The Requirements of Rule 23(b)(3) Are Met

#### 1.      Common questions of law and/or fact predominate over questions affecting individual class members

Finally, the proposed class meets the requirements of Rule 23(b)(3). Rule 23(b)(3) "provides that a class action may be maintained if the court finds the questions of law and fact common to members of the class predominate over the questions affecting only individual class members, and a class action is a superior method for fair and efficient adjudication of the dispute." *In re St. Jude Medical, Inc.*, 425 F.3d 1116, 1119 (8th Cir. 2005).  "The requirement of Rule 23(b)(3) that common questions predominate over individual questions 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005) (quoting *Amchem*, 521 U.S. at 623).  "The common questions need not be determinative, but the efficiency and economy of class adjudication must outweigh the difficulties and complexity of individual treatment of class member claims." *Esler v. Northrop Corp.*, 86 F.R.D. 20, 38 (W.D.Mo. 1979). The "fundamental question is whether the group aspiring to class status is seeking to remedy a common legal grievance." *Carpe v. Aquila, Inc.*, 224 F.R.D. 454, 458 (W.D. Mo. 2004).

As described above, Plaintiffs and the Class allege injury by a common set of policies and practices.  These allegations provide the common issues required to ensure predomination of common questions over individual issues.  The common questions of law and fact listed above are dispositive questions in the case of every member of the Class.  The question of liability can

therefore be determined on a class-wide basis. Class-wide treatment of liability is a far superior method of determining the content and legality of Defendant's policies and practices than individual suits by hundreds or thousands of residents of the City of Jennings.  The question of damages are suited for class-wide determination as it will be driven by common considerations, such as the policies, practices, and conditions at the City of Jennings jail.  To the extent that individual damages will vary, they will vary depending in large part on the amount of time that a person was allegedly unlawfully jailed.  Under the terms of the settlement, Class Members who submit a valid claim will receive a portion of the award calculated at a per diem rate for the number of days spent by them in jail.

### 2.      A class action is the superior means to adjudicate the claims at issue

The Court's final consideration in applying Rule 23(b)(3) is whether a class action is the superior method for adjudicating the case. Fed.R.Civ P. 23(b) lists the factors pertinent to the superiority determination as follows:

> (A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in a particular forum; (D) the difficulties likely to be encountered in the management of the class action.

All four of these factors support certification here for settlement purposes.

### a.      Most class members have an insufficient interest to justify individual lawsuits

Certification permits a class-wide adjudication of the claims of similarly situated claimants when individual prosecution would not be cost-effective.  The Supreme Court has frequently noted the need for aggregate representation through certification if such claims are to be addressed. *Deposit Guaranty Nat'l Bank v. Roper, 445 U.S. 326, 339 (1980); Phillips Petroleum Co. v. Shutts,*

*472 U.S. 797, 809 (1985).*  This clear theme in Supreme Court jurisprudence was reiterated in *Amchem*, wherein the Court stated:

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Amchem*, 521 U.S. at 617 (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)).

Effective private enforcement requires mechanisms to aggregate these relatively small but important claims lest the relatively small stake of each individual, as well as the indigence of many members of the proposed class, present an insurmountable hurdle to vindication of constitutional rights.  Aggregate litigation is therefore indispensable to the protection of citizens against the alleged unconstitutional policies and practices by the Defendant.  The class action mechanism is meant to afford remedies to claimants who cannot otherwise prosecute their claims in a cost-effective manner. *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 155 (1982).  The claims at issue here are such that class relief is the only realistic alternative to no relief at all for the vast majority of Class Members.

> **b.**  **The extent and nature of any other litigation commenced by class members**

There are no other pending class actions against Defendant asserting the claims here in dispute. Therefore, this factor supports settlement class certification.

> **c.**  **This Court is an appropriate forum for resolution of the claims in dispute**

There is no question that this Court has subject matter jurisdiction over the claims alleged in this case, personal jurisdiction over the Parties and that personal jurisdiction extends to members of the Class under the Due Process Clause of the Fourteenth Amendment to the United State

sConstitution because the notice provided in this case was constitutionally sufficient. *Shutts*, 472 U.S. at 811-812.

### d.       Manageability

The Supreme Court confirmed in *Amchem* that the manageability of a class action at trial is an irrelevant consideration in the context of a proposed settlement class, because the proposal is that there be no trial. *Amchem*, 521 U.S. at 620; *In re Prudential Ins. Co. of America Sales Practice Litig.*, 148 F.3d 283, 316 n. 57. Therefore, the Court need not consider manageability as part of its settlement approval calculus.

## V.    THE    PROPOSED    NOTICE    TO    PUTATIVE    CLASS    MEMBERS    IS APPROPRIATE

This Court has wide discretion in determining what constitutes reasonable notice of a class settlement under Rule 23(e), in form as well as method.  *See Franks v. Kroger Co.*, 649 F.2d 1216, 1222-23 (6th Cir. 1981), *modified on other grounds on rehearing,* 670 F.2d 71 (6th Cir. 1982); 7B Fed. Prac. & Proc. § 1797.6.   The notice should "inform class members of the terms of the settlement and of the steps required to be taken to file claims or to object to or exclude themselves from the settlement."  *EEOC v. Fairbault Foods, Inc.,* 2008 WL 879999, *1 (D.Minn. Mar. 28, 2008).  In this case, after careful discussion and consideration, the Parties agree on the content and methods of notice.

As provided by the settlement agreement, the Notice program will be executed by Dahl Administration, LLC, who will mail each Class Member a Class Notice and Claim Form along with return envelopes.  Records have been provided by the Defendant in order to acquire the name and address of each Class Member.  The Class Notice and Claim Form will also be posted in the Jennings Jail and Jennings City Hall, and on the World Wide Web.  Notice will also be made available through publications in the *St. Louis American* on at least one day per week for three

consecutive weeks commencing on the Notice Date.  The parties believe the notice set forth in the

Settlement Agreement represents the best practicable notice in the context of the claims in dispute.

A copy of the proposed Class Notice is appended to the Settlement Agreement as Exhibit C.

As for the content of the Notice, Rule 23(c)(2)(B) provides:

The notice [to a Rule 23(b)(3) class] must concisely and clearly state in plain, easily

understood language: the nature of the action, the definition of the class certified,

the class claims, issues or defenses, that a class member may enter an appearance

through counsel if the class member so desires, that the court will exclude from the

class any member who requests exclusion, stating when and how members may

elect to be excluded, and the binding effect of a class judgment on class members

under Rule 23(c)(3).

Fed.R.Civ.P. 23(c)(2)(B).

The proposed form of notice describes the nature, history and status of the litigation; sets

forth the definition of the Class; states the class claims and issues; discloses the right of Class

members to seek exclusion from the Class or to object to the proposed settlement, as well as the

deadlines for doing so, and warns of the binding effect of the settlement approval proceedings on

people who remain in the Class.  In addition, the Notice describes the terms of the proposed

settlement and provides contact information for Plaintiffs' Counsel, as well as identifying the fee

that they propose to request from the Court.  The Notice also discloses the time and place of the

Final Settlement Hearing and the procedures for commenting on the settlement and/or appearing

at the hearing.  The contents of the notice therefore satisfy all applicable requirements.

**V.      CONCLUSION**

For all of the foregoing reasons, the Parties respectfully request that the Court (1) grant preliminary approval of the proposed class action settlement; (2) certify the proposed settlement class; (3) authorize the publication of Class Notice; and, (4) schedule a final approval hearing approximately ninety (90) days after the date of preliminary approval.

Respectfully submitted,


/s/ Thomas B. Harvey
Thomas B. Harvey (MBE #61734)

/s/ Michael-John Voss
Michael-John Voss (MBE #61742)

/s/ Blake A. Strode
Blake A. Strode (MBE #68422)
ArchCity Defenders
1210 Locust St., 2nd Floor
St. Louis, MO  63103
(855) 724-2489


/s/ Alec Karakatsanis
Alec Karakatsanis (E.D. Mo.Bar No. 999294 DC)
Equal Justice Under Law
916 G Street, NW Suite 701
Washington, D.C.  20001
(202) 681-2409
alec@equaljusticeunderlaw.org


/s/ John J. Ammann
John J. Ammann (MBE #34308)

/s/ Stephen Hanlon
Stephen Hanlon (MBE #19340)

/s/ Brendan Roediger
Brendan Roediger (E.D.Mo. Bar No. IL 6287213)
Saint Louis University School of Law

100 N. Tucker Blvd.
St. Louis, MO  63101-1930
(314) 977-2778
broedige@slu.edu
*Attorneys for Plaintiffs and the Class*


/s/ D. Keith Henson
D. Keith Henson, #31988MO
Paule, Camazine & Blumenthal, P.C.
165 North Meramec Ave., Suite 110
Clayton, MO  63105
(314) 727-2266
khenson@pcblawfirm.com
*Attorney for Defendant The City of Jennings*